*In re* MARRIAGE OF SYLVIA L. MORSE, Petitioner-Appellee, and EDWARD W. MORSE, JR., Respondent-Appellant.

Fifth District   No. 5—85—0194

Opinion filed March 10, 1986.—Supplemental opinion filed on rehearing June 25, 1986.

850

Mary Robinson, of Robinson & Skelnik, of Elgin, for appellant.

Norman J. Fombelle and Kent A. Rathbun, both of Burger, Fombelle, Baxter, Zachry & Rathbun, P.C., of Decatur, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Edward W. Morse, Jr., respondent-appellant, appeals from a judgment of the circuit court of Bond County dismissing his post-trial motion and from the judgment dissolving his marriage to Sylvia L. Morse, petitioner-appellee, as it pertains to the issues of property division, maintenance, child support, visitation, and attorney fees.

Dissolution of marriage was entered August 9, 1983, and, after hearings on custody, support, and property, a final judgment was entered on December 19, 1984. The circuit court granted petitioner's motion to strike respondent's post-trial motion as untimely filed. By order of this court, the issue of timeliness of the post-trial motion was taken with this appeal.

We must first determine whether the deposit of respondent's post-trial motion in the mail constitutes a filing of the motion pursuant to section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1203). The final order in this case was entered December 19, 1984. Consequently, respondent had until January 18, 1985, to file a timely post-trial motion. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1203.) Respondent's post-trial motion contained a proof of service stamp stating that the motion had been placed in the mail on January 18, 1985. However, respondent's post-trial motion was postmarked January 19, 1985, and was not filed by the clerk of the circuit court until January 21, 1985.

Petitioner asserts that respondent's post-trial motion was not filed within the meaning of section 2—1203 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1203) until January 21, 1985, and, therefore, the motion was untimely and does not serve to extend the time allowed for filing a notice of appeal. (87 Ill. 2d R. 303(a).) Subsequently, petitioner argues that this court lacks jurisdiction over this appeal. It is respondent's position that his post-trial motion was filed when it was placed in the mail on January 18, 1985, and, therefore, the motion was timely. According to respondent, he had 30 days from the entry of the order disposing of his post-trial motion, February 25, 1985, to file his notice of appeal. Because notice of appeal was filed March 22, 1985, respondent asserts that this court has jurisdiction to consider

this appeal.

In *Holesinger v. Dubuque Feeder Pig Co.* (1982), 104 Ill. App. 3d 39, 432 N.E.2d 645, this court accepted jurisdiction where notice of appeal was mailed within the 30-day period set forth in Supreme Court Rule 303(a) (87 Ill. 2d R. 303(a)), even though the clerk of the court did not receive the document until after the 30-day period had expired. In the exercise of its supervisory jurisdiction, the supreme court, citing *Holesinger*, reversed a judgment of this court dismissing an appeal as untimely and remanded the cause for consideration of the issues raised in the notice of appeal. (*Riedel v. Riedel* (1984), 99 Ill. 2d 534, 462 N.E.2d 198.) Although *Riedel* was issued in the form of a supervisory order, we believe that, by citing *Holesinger*, the court adopted the view that the date of mailing a notice of appeal constitutes filing for purposes of Supreme Court Rule 303(a) (87 Ill. 2d R. 303(a)).

In *A.S. Schulman Electric Co. v. Village of Fox Lake* (1983), 115 Ill. App. 3d 746, 450 N.E.2d 1356, this court, applying *Holesinger*, held that the mailing of a post-trial motion on the 29th day after entry of the final order was timely notwithstanding that the circuit court did not receive the motion until the 31st day after entry of the final order.

The difficulty presented in the instant case centers on the discrepancy between the postmark date of January 19, 1985, which exceeds the 30-day period for filing a post-trial motion, and the proof of service date of January 18, 1985, which is within the statutory period (Ill. Rev. Stat. 1983, ch. 110, par. 2—1203). We are unable to glean from the facts of either *Holesinger* or *Schulman* whether the documents in question were postmarked within the 30-day period. In *Holesinger*, the court stated that the facts showed that the attorney had mailed notice of appeal two days before the expiration of the 30-day period. (*Holesinger v. Dubuque Feeder Pig Co.* (1982), 104 Ill. App. 3d 39, 42, 432 N.E.2d 645, 648.) In *Schulman*, an affidavit signed by the attorney stated that the post-trial motion had been mailed within the 30-day period. *A.S. Schulman Electric Co. v. Village of Fox Lake* (1983), 115 Ill. App. 3d 746, 748, 450 N.E.2d 1356, 1358.

■■ At the hearing on petitioner's motion to strike respondent's post-trial motion, the circuit court stated that it had no reason to suspect that respondent's attorney would post-date the proof of service. Respondent's motion to supplement the record with affidavits of trial counsel and his secretary, who had signed the proof of service, was denied. Although cognizant of the fact that a proof of service stamp is more easily tampered with than a postmark, we conclude that a proof of service date is sufficiently analogous to an affidavit attesting to the mailing date so as to extend the reasoning in *Schulman* to the present case. The fact that the envelope containing respondent's post-trial mo-

tion was addressed to the judge rather than the circuit clerk does not alter our decision. (See *Schneider v. Vine Street Clinic* (1979), 77 Ill. App. 3d 946, 948-49, 397 N.E.2d 194, 196 (Craven, J., dissenting), citing *In re Estate of Eiberger* (1977), 49 Ill. App. 3d 1129, 368 N.E.2d 230 (Rule 23 order).) We reach our holding that respondent's post-trial motion was timely filed and that, subsequently, this appeal is also timely in light of our belief that the supreme court has adopted a position that doubts as to the timeliness of appeals should be resolved so to favor review in the appellate court. *Riedel v. Riedel* (1984), 99 Ill. 2d 534, 462 N.E.2d 198.

The second issue raised by respondent is whether the circuit court's valuation of respondent's nonmarital insurance agency and the court's finding that petitioner's contribution of personal effort toward the insurance agency entitled her to reimbursement constitute an abuse of discretion requiring reversal of the property distribution. *In re Marriage of Benefield* (1985), 131 Ill. App. 3d 648, 650, 476 N.E.2d 7, 9.

Respondent complains that the circuit court's valuation of Morse & Associates Insurance, Inc., owned solely by respondent, was excessive and that the court erred in finding that petitioner was entitled to reimbursement for the personal efforts she exerted toward the appreciation of the insurance agency. Pursuant to stipulation, the circuit court admitted both parties' written appraisals of the value of the insurance agency. Because respondent's witness was not qualified as an expert, he was not allowed to explain his basis for valuing the insurance agency at $75,000. The order appealed from states that little weight was given to this appraisal. The circuit court apparently rejected respondent's testimony that the insurance agency was a negative asset and agreed with the appraisal submitted by petitioner that the agency was mismanaged. The circuit court concluded that respondent was neglecting his business intentionally so as to enable him to plead destitution. The court classified the insurance agency as respondent's nonmarital property and, relying upon the appraisal submitted by petitioner, valued the agency at $142,000.

According to petitioner, she worked an average of one to three hours a day at the insurance agency managing the office, running errands, decorating, and balancing checking accounts. Additionally, petitioner became a licensed insurance broker and sold two policies. Respondent's witnesses disputed the extent of petitioner's involvement in the insurance agency. Petitioner was paid $50 per month for social security purposes and either received this check directly or allowed the check to be endorsed and deposited either into the agency's accounts or the parties' personal account. Petitioner further testified that she be-

came involved in local politics, at respondent's request, to enhance the business of the insurance agency.

Upon this evidence, the circuit court found that section 503(c)(2) of the Illinois Marriage and Dissolution of Marriage Act clearly indicated that petitioner was entitled to reimbursement for her contributions to the enhancement of the value of the insurance agency. (Ill. Rev. Stat. 1983, ch. 40, par. 503(c)(2).) In valuing petitioner's right to reimbursement, the circuit court concluded that the insurance agency had appreciated by $62,000 during the marriage. The court ordered respondent to reimburse petitioner in the amount of $20,000, payable in installments of no less than $200 per month.

The increase in value of nonmarital property, however achieved, is classified as nonmarital property subject to the right of reimbursement. (Ill. Rev. Stat. 1983, ch. 40, par. 503(a)(7).) Section 503(c)(2) of the Illinois Marriage and Dissolution of Marriage Act states that "when a spouse contributes personal effort to non-marital property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made *** in the case of a contribution of personal effort *** unless the effort is significant and results in substantial appreciation of the non-marital property. Personal effort of a spouse shall be deemed a contribution by the marital estate." Ill. Rev. Stat. 1983, ch. 40, par. 503(c)(2).

■ Although the circuit court correctly classified the insurance agency as respondent's nonmarital property, and properly found that it had not been transmuted into marital property, the court erred in its application of the right to reimbursement. The requirement that no reimbursement is to be made unless a spouse's personal efforts are significant and result in substantial appreciation of the nonmarital property is designed to avoid *de minimus* claims. (Feldman & Fleck, *Taming Transmutation: A Guide to Illinois' New Rules on Property Classification and Division Upon Dissolution of Marriage*, 72 Ill. B.J. 336, 343 (1984).) We conclude that petitioner's minimal involvement in the insurance agency does not rise to the level of "significant effort," nor do we believe that her involvement led to "substantial appreciation" of the insurance agency. (Ill. Rev. Stat. 1983, ch. 40, par. 503(c)(2).) Therefore, we hold that the circuit court abused its discretion in finding that petitioner is entitled to reimbursement under section 503(c)(2) of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1983, ch. 40, par. 503(c)(2).

■ ■ Furthermore, we note that the correct procedure to be applied under section 503(c)(2) is to determine whether either spouse, petitioner or respondent, contributed significant personal effort toward

the insurance agency which resulted in substantial appreciation of that business. (Ill. Rev. Stat. 1983, ch. 40, par. 503(c)(2); *In re Marriage of Thornton* (1985), 138 Ill. App. 3d 906, 919, 486 N.E.2d 1288, 1297.) Because personal effort of a spouse is deemed a contribution by the marital estate, respondent's contribution of personal effort toward his nonmarital property may entitle the marital estate, not petitioner, to reimbursement from the nonmarital estate receiving the contribution. (Ill. Rev. Stat. 1983, ch. 40, par. 503(c)(2).) However, it is the appreciation resulting from significant personal effort, not inflation or other factors external to the marriage, which entitles the marital estate to reimbursement. (Ill. Rev. Stat. 1983, ch. 40, par. 503(a)(7); Feldman & Fleck, *Taming Transmutation: A Guide to Illinois' New Rules on Property Classification & Division Upon Dissolution of Marriage*, 72 Ill. B.J. 336, 338-39 (1984).) Additionally, in valuing the right to reimbursement, if respondent's salary is found to be reasonable compensation for his efforts, the nonmarital business need not reimburse the marital estate because respondent's salary during the marriage is marital property and, thus, the marital estate has already been compensated. Feldman & Fleck, *Taming Transmutation: A Guide to Illinois, New Rules on Property Classification & Division Upon Dissolution of Marriage*, 72 Ill. B.J. 336, 344 (1984).

We conclude that this cause must be remanded for a proper consideration of the property distribution in light of our determination that petitioner is not entitled to reimbursement. Upon remand, the valuation of the insurance agency is to be reexamined in order to determine whether respondent's personal efforts entitle the marital estate to reimbursement, taking into account appreciation due to factors external to the marriage and respondent's salary.

■ Respondent also challenges the circuit court's finding that petitioner's Coates Steel stock has no value. This court has long recognized that the valuation of a closely held corporation is not an exact science and that the trial court's judgment should be upheld where the record supports the valuation, or put otherwise, unless clearly against the manifest weight of the evidence. (*In re Marriage of Holder* (1985), 137 Ill. App. 3d 596, 603, 484 N.E.2d 485, 491; *In re Marriage of Rosen* (1984), 126 Ill. App. 3d 766, 775-76, 467 N.E.2d 962, 968.) While petitioner testified that she believed that her stock was worthless, she introduced a letter in which her uncle, president of the corporation, asserted that the book value of the stock on December 31, 1983, was $89.91 per share. Furthermore, the stock had been valued at $95 per share in 1981 for Federal estate tax purposes. Although shares in a close corporation are not listed on the stock exchange and, consequently, there is no established market for the corporation's stock, the

shareholders of a close corporation do realize a value from stock ownership in that they have certain rights of control and to future profits. (*In re Marriage of Reib* (1983), 114 Ill. App. 3d 993, 1000, 449 N.E.2d 919, 925, citing *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 635, 397 N.E.2d 488, 494.) Evidence of stock valuations in the recent past are indicative of value at the time of dissolution. (*In re Marriage of Mullins* (1984), 121 Ill. App. 3d 86, 89, 458 N.E.2d 1360, 1362.) Therefore, we hold that the circuit court's failure to assign a positive value to petitioner's Coates Steel stock is not supported by the evidence. We decline to award a value to the stock; however, upon remand, petitioner's Coates Steel stock should be revalued consistent with the views heretofore expressed.

Respondent also complains that the circuit court erred in finding that his one-third interest in his mother's 70-acre farm is a present, fully vested interest valued at $93,000. The parties stipulated at trial that respondent's mother would testify that her 70-acre farm had been placed into a revocable trust and that she retained all present income from the farm with respondent receiving his one-third interest only upon his mother's death. Based upon this stipulation alone, respondent argues that his one-third interest in the farm is a mere expectancy and does not constitute property within the meaning of section 503 of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1983, ch. 40, par. 503.) Petitioner introduced a financial statement dated May 12, 1981, in which respondent's one-third interest in the farm trust was valued at $4,000 per acre.

■ In finding that respondent has a present interest in the farm trust worth $93,000, the circuit court noted that respondent's mother appeared to be engaging in some mendacity in concert with her son and, therefore, the court relied upon the financial statement in valuing respondent's interest in the 70-acre farm. The valuation of assets is properly a matter for the trial court. (*In re Marriage of Block* (1982), 110 Ill. App. 3d 864, 870, 441 N.E.2d 1283, 1288.) It is the parties' obligation to present the court with sufficient evidence of the value of the property. (*In re Marriage of Holder* (1985), 137 Ill. App. 3d 596, 603, 484 N.E.2d 485, 490-91.) Respondent failed to produce any evidence supporting his contention that his interest in his mother's farm constitutes a mere expectancy and cannot be classified as property. Unlike the situation presented by the Coates Steel stock, where the circuit court valued the stock as worthless in the face of contrary evidence that the stock had value, the court apparently found the financial statement more credible than respondent's, or his mother's, bare assertion that respondent has no present interest in the farm. In the absence of evidence more persuasive than the unsupported opinions of

respondent and his mother, the financial statement is competent evidence of value. (See, *e.g., In re Marriage of Block* (1982), 110 Ill. App. 3d 864, 870, 441 N.E.2d 1283, 1288.) Therefore, we hold that the circuit court's valuation of respondent's one-third interest in the 70-acre farm is supported by the evidence.

■■ Lastly, respondent challenges the order of the circuit court requiring him to pay $20,000 toward petitioner's attorney fees. (Ill. Rev. Stat. 1983, ch. 40, par. 508.) Respondent contends that the award of attorney fees constitutes an abuse of discretion because petitioner failed to establish that she is unable to pay the fees and that respondent is able to do so. (*In re Marriage of Goforth* (1984), 121 Ill. App. 3d 673, 683, 459 N.E.2d 1374, 1382.) Alternatively, respondent contends that even if the evidence supports a finding that he should pay a portion of petitioner's attorney fees, the amount assessed is unreasonable.

Petitioner's trial attorney computed his fee of approximately $28,000 at hourly rates of $200 for in-court time and $150 for out-of-court time for his own efforts and $150 in-court time and $100 out-of-court time for his associates. Petitioner's attorney attested that fees customarily charged in Macon County by attorneys with similar experience, reputation and professional standing in contested dissolution cases are $150 for services in-court and $125 for out-of-court services.

> "Factors to be considered *** in determining what are reasonable fees are the attorney [*sic*] skill and standing, the nature of the controversy, the novelty and difficulty of the questions at issue, the importance of the subject matter, the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary charge in the community and the benefits to the client." (*In re Marriage of Angiuli* (1985), 134 Ill. App. 3d 417, 423, 480 N.E.2d 513, 518.)

The amount awarded is within the discretion of the trial court whose decision will not be reversed absent an abuse of discretion. *In re Marriage of Armstrong* (1982), 107 Ill. App. 3d 217, 219, 437 N.E.2d 761, 762.

Respondent's primary contention is that the hourly rates charged by petitioner's attorney are excessive. Petitioner's attorney admitted in his affidavit that the hourly rates he charged were in excess of those customarily charged in Macon County. Because no inquiry was made into what the usual and customary fees are for like services in Bond County (*In re Marriage of Angiuli* (1985), 134 Ill. App. 3d 417, 424-25, 480 N.E.2d 513, 519), we hold that the amount of the award of attorney fees constitutes an abuse of discretion. The determination that a spouse is entitled to attorney fees is dependent upon the distribution of property and, therefore, it would be futile for us to consider the pro-

priety of such an award where we are remanding this cause for a reconsideration of the valuation, classification and distribution of property.

In summary, this cause is remanded for a new hearing on the contested issues of valuation of respondent's insurance agency, in light of our decision that petitioner is not entitled to reimbursement, valuation of petitioner's Coates Steel stock, and assessment of attorney fees. The circuit court's distribution of marital property is necessarily affected by the valuation and classification of the parties' nonmarital property, and, therefore, the distribution must be reversed. Our reversal of the property disposition requires that the court reexamine the awards of maintenance, child support, and attorney fees. (*In re Marriage of Harmon* (1985), 133 Ill. App. 3d 673, 676-77, 479 N.E.2d 422, 425.) We uphold the circuit court's valuation of respondent's interest in the farm. Although we do not conclude that the terms of visitation constitute an abuse of discretion, upon remand, the circuit court may wish to reconsider the terms of visitation under the temporary order should respondent be willing to visit with his daughter in Greenville, thereby avoiding the hardship incurred by the child by travel.

The decision of the circuit court of Bond County is reversed in part and remanded, and affirmed in part.

Reversed in part and remanded; affirmed in part.

HARRISON and WELCH, JJ., concur.

## SUPPLEMENTAL OPINION ON REHEARING

JUSTICE KARNS delivered the opinion of the court:

In her petition for rehearing, petitioner requests the following alternative relief: (1) reconsideration of our determination that respondent's post-trial motion was timely filed; (2) reconsideration of our reversal of the award of attorney fees; (3) clarification and modification with respect to the necessity of revaluing respondent's insurance agency upon remand; and (4) affirmance of the property distribution and the awards of maintenance and child support subject to remittitur by petitioner of the reimbursement money judgment awarded her for her contribution toward the appreciation in value of the insurance agency.

We adhere to our conclusions that respondent's post-trial motion was timely filed and that the award of attorney fees constitutes an abuse of discretion absent evidence of the usual and customary fees charged in the county in which the proceedings occurred. (*In re Mar-*

*riage of Angiuli* (1985), 134 Ill. App. 3d 417, 423-24, 480 N.E.2d 513, 519.) Petitioner asserts that the award should be affirmed because respondent failed to produce evidence of the usual and customary fees charged in Bond County. However, petitioner, as the one seeking the award, must establish that those fees are reasonable. Petitioner directs our attention to *In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 402 N.E.2d 332 and *In re Marriage of Goforth* (1984), 121 Ill. App. 3d 673, 459 N.E.2d 1374. In *Preston,* we held that petitioner had waived his right to a separate hearing on the propriety of awarding attorney fees and concluded that the award was proper in light of the fact that the trial court had sufficient evidence before it to make a determination on the relative financial ability of each party to pay his own fees. (*In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 681, 402 N.E.2d 332, 340.) In the instant case, we do not dispute the trial court's finding that petitioner is unable to pay her attorney fees and that respondent is able to do so. (*In re Marriage of Goforth* (1984), 121 Ill. App. 3d 673, 683, 459 N.E.2d 1374, 1382.) We do, however, question the reasonableness of the fees in light of petitioner's own attorney's testimony that the fees charged were in excess of those customarily charged in Macon County and the lack of evidence as to the fees customarily charged in Bond County. In this regard, the instant case is also distinguishable from *Goforth* where the record contained sufficient evidence of the reasonableness of the fees charged. 121 Ill. App. 3d 673, 683, 459 N.E.2d 1374, 1382.

Petitioner requests clarification and modification of our decision with respect to the necessity of revaluing respondent's nonmarital insurance agency upon remand in light of our decision that petitioner is not entitled to reimbursement for her insignificant contributions toward the agency. We agree with petitioner's assertion that our directions upon remand require clarification. The trial court did not abuse its discretion in valuing the insurance agency, and upon remand, the distribution of property is to be reexamined in light of our determination that petitioner is not entitled to reimbursement. The procedure for determining whether the marital estate is entitled to reimbursement (Ill. Rev. Stat. 1983, ch. 40, par. 503(c)(2)) has been outlined in our original disposition. Our reversal of the property distribution necessarily requires the trial court to reconsider the awards of maintenance, child support and attorney fees. *In re Marriage of Harmon* (1985), 133 Ill. App. 3d 673, 676-77, 479 N.E.2d 422, 425.

Petitioner offers, in the nature of a remittitur, to accept the property distribution and the awards of maintenance and child support and to remit the sum of $20,000 awarded her as reimbursement for her contribution toward the appreciation in value of the insurance agency.

Upon due consideration and in answer to petitioner's request for affirmance of the property distribution and awards of maintenance and child support, subject to remittitur, we conclude that these matters are more properly left to the sound discretion of the trial court upon remand. We deny the relief prayed for by petitioner and adhere to our original disposition as clarified above.

HARRISON and WELCH, JJ., concur.